UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-122-F

| | |
|---|---|
| CAROL DALENKO, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     ORDER |
| | ) |
| DONALD W. STEPHENS, *et al.* | ) |
| Defendants. | ) |

This matter is before the court on the Motion to Dismiss Complaint, "Joined Complaint,"

Amended Complaint, and Amended Complaint (II) [DE-41] filed by Defendants Donald W.

Stephens, Shannon R. Joseph, William R. Pittman, Kenneth C. Titus, Sanford L. Steelman, Jr.,

Barbara A. Jackson, Donna S. Stroud, Robert C. Hunter, James A. Wynn, Jr., Sam Ervin, IV,

Robert N. Hunter, Jr., and F. Blare Williams (collectively, "state judicial defendants"). In

response to this motion, the *pro se* Plaintiff filed a Motion to Strike Insufficient Defenses [DE-

56]. Both motions are ripe for ruling.

## I. PROCEDURAL AND FACTUAL HISTORY

The parties agree that this latest action[1] in this court filed by the *pro se* Plaintiff arises out

---

[1] Plaintiff's prior actions include *Bennett v. Wake County*, 5:04-CV-301-H, *Bennett v. Robertson-Ceco Corporation*, 5:04-CV-374-FL, *Bennett v. Martin*, 5:04-CV-811-H, *Dalenko v. Aldridge*, 5:09-CV-117-F; *Dalenko v. News and Observer Publishing Company*, 5:10-CV-184-H; *Dalenko v. Peden General Contractors, Inc.*, 5:10-CV-287-F, and *Dalenko v. Stephens*, 5:10-CV-432-F. She also has filed two actions in the capacity of the personal representative and executrix of her late father's estate: *Estate of Dalenko v. Russell*, 5:04-CV-438-H and *Estate of Dalenko*, 5:03-CV-550-H. Plaintiff filed a notice of voluntary dismissal in *Dalenko v. Stephens*, 5:10-CV-432-F. The remaining actions have been dismissed for lack of subject matter jurisdiction and/or failure to state a claim.

of various North Carolina court proceedings involving the Plaintiff. Because the state proceedings are explicitly referenced in Plaintiff's pleadings and provide the underlying basis for her claims, the court briefly summarizes them.

## A. Underlying state court proceedings

The first set of state proceedings concern an action filed by Plaintiff in Wake County Superior Court, 07 CV 5130, asserting claims arising out of a 2002 Arbitration Agreement. Plaintiff entered into the 2002 Arbitration Agreement during state court litigation, 98 CVS 14297, against her arising out of a 1998 construction contract. *See* Amended Complaint II [DE-36] p .2, ¶¶ 49, 55; *Dalenko v. Peden General Contractors, Inc.*, 197 N.C. App. 115,117-20, 676 S.E.2d 625, 627-29 (2009) (per curiam).[2] The court hereinafter will refer to these proceedings as *Peden.* The Wake County Superior Court issued rulings adverse to Plaintiff, and specifically ordered:

> Any further claims or actions filed by Plaintiff, Dalenko (formerly Carol Bennett) arising out of, and/or related to, *Peden v. Bennett*, 98 CVS 14297, Wake County Superior Court, including, but not limited to, any order or decree entered in that

---

[2] The court cites to the *Peden* opinion and other state appellate opinions because they are integral to and explicitly relied on in the Amended Complaint (II) and Plaintiff does not challenge its authenticity. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (1999). The court recognizes that Plaintiff does not agree with certain statements made in the opinion, but there is no suggestion that the opinion is not authentic. Additionally, when ruling on a motion to dismiss for failure to state a claim, a court may take judicial notice of matters of public record. *Secretary of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). State court filings and opinions are matters of public record. *Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 855 F. Supp.2d 476, 486 (D.Md. 2012) (citing *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)). Additionally, when ruling on a motion to dismiss for lack of subject matter jurisdiction, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

case and/or the facts related to the proceedings in that case, are without lawful
basis and are specifically prohibited. If Plaintiff hereafter violates this
prohibition, she may be subject to criminal contempt of court.

*Peden*, 197 N.C. App. at 119, 676 S.E.2d at 629 ("The 2007 Gatekeeper Order"). After a series

of rulings adverse to Plaintiff, she filed an appeal to the North Carolina Court of Appeals, which

affirmed the various rulings issued by the Wake County Superior Court. *Id.* at 129, 676 S.E.2d at

634. In the course of its opinion, the North Carolina Court of Appeals made reference to a 2001

Gatekeeper Order entered against Plaintiff. *Id.* at 118 n.1, 676 S.E.2d at 628 (citing *Dalenko v.*

*Collier*, 191 N.C. App. 713, 664 S.E.2d 425, *appeal dismissed*, 362 N.C. 680, 670 S.E.2d 563

(2008)). The 2001 Gatekeeper Order provided:

> So long as [Dalenko] does not qualify as an indigent pursuant to N.C.G.S. 1-110,
> she shall not file, or attempt to file, any documents with the Office of the Clerk of
> Superior Court of Wake County unless such document contains a certification by
> an attorney licensed under the laws of the State of North Carolina to practice law
> in North Carolina that in the opinion of that attorney the document complies with
> Rule 11 of the Rules of Civil Procedure. The certification shall also contain a
> recitation that the attorney has read and is aware of the requirements of this Order.
> A failure to comply with the certification requirement as set forth herein shall
> result in the dismissal or striking of the pleading or pleadings and the denial of the
> motion or motions.

*Dalenko v. Monroe*, 197 N.C. App. 231, 676 S.E.2d 670, 2009 WL 138333 (N.C. Ct. App. May

19, 2009) (unpublished).

The second set of state proceedings concern an action in which Plaintiff appeared as

executrix of her late father's estate in Wake County Superior Court, 07 CVS 1640. Amended

Complaint II [DE-47] p.3, ¶ 75. Again, after rulings adverse to her, Plaintiff filed an appeal to

the North Carolina Court of Appeals, which affirmed the lower court's orders. *See Dalenko v.*

*Monroe*, 197 N.C. App. 231, 676 S.E.2d 670, 2009 WL 1383333 (May 19, 2009) (unpublished).

The court will refer to this set of proceedings as *Monroe*.

3

The third set of state proceedings concern a libel action Plaintiff filed in Wake County Superior Court, 06 CVS 14229, concerning a 2004 article published in the *News & Observer*. Amended Complaint II [DE-47] p. 2, ¶¶ 92-105. Again, after adverse rulings, Plaintiff filed an appeal which was unsuccessful. *Bennett v. News and Observer Publishing Company*, 680 S.E.2d 904, 2009 WL 2138669 (N.C. Ct. App. July 7, 2009). The court will refer to these proceedings as *N&O*.

## B. Selected previous related federal litigation

Plaintiff filed *Dalenko v. Peden General Contractors, Inc., et al.*, 5:10-CV-287-F (hereinafter "*Dalenko I*"), on July 20, 2010, alleging, *inter alia*, that Superior Court Judges Donald W. Stephens and Shannon R. Joseph and North Carolina Court of Appeals Judges Sanford L.Steelman, Jr., Barbara A. Jackson and Donna S. Stroud violated her due process rights under the Fourteenth Amendment and her right to contract under Article I of the United States Constitution through their actions and inactions in the course of the *Peden* litigation and appeal. Dalenko filed a Notice of Voluntary Dismissal of her claims on March 7, 2011. *See* Amended Complaint (II) [DE-47] p.1.

Plaintiff filed *Dalenko v. Stephens, et al.*, 5:10-CV-432-H (hereinafter *Stephens I*) on October 8, 2010, alleging, *inter alia*, that Superior Court Judges Stephens, William R. Pittman, and Kenneth C. Titus, and North Carolina Court of Appeals Judges Jackson, James A. Wynn, Jr., and Robert N. Hunter, Jr.:

> acted under color of law without jurisdiction, to deprive her of property rights . . .
> without "due process" in violation of her Fourteenth Amendment rights in her
> state civil libel suit against N&O and on appeal, and barred her access to the
> courts and imprisoned her to deter her from petitioning for redress of grievances
> according to her lawful rights in violation of her First, Fifth, Seventh, and
> Fourteenth Amendment rights, and deprived plaintiff of her First Amendment

right to vindicate her reputation . . . and that defendant judges should be enjoined in their official capacities from further injury to the plaintiff in her rights and her person, and are liable to her in their individual capacities when they lacked subject-matter jurisdiction in their official capacities . . . .

*Stephens I*, 5:10-CV-432-H, Compl. [DE-1] p. 17. Plaintiff's claims in *Stephens I* arose in the course of her *N&O* litigation in state court. Senior United States District Judge Malcolm J. Howard dismissed Plaintiff's complaint in an order filed on July 7, 2011 for lack of jurisdiction. *Stephens I.*, 5:10-CV-432-H, July 7, 2011, Order [DE-60].

## C. The current action

Plaintiff initiated the instant action by filing a Complaint [DE-1] on March 7, 2012, alleging that Defendants Stephens, Joseph, Steelman, Jackson and Stroud, all judicial officers, acted under color of state law to deprive her of property, civil liberties, and freedom without prior notice or meaningful opportunity to be heard in violation of her due process rights under the Fourteenth Amendment throughout the course of the *Peden I* litigation. Compl. [DE-1]. She alleged that she is entitled to declaratory relief "to protected her federally guaranteed rights in state superior court" and sought damages against Defendants individually. *Id.*

On May 22, 2012, Plaintiff filed a "Joined Complaint" [DE-9] alleging claims against North Carolina Court of Appeals Judges Robert C. Hunter, Wynn, and Sam Ervin, IV. Specifically, Plaintiff alleged Judges Hunter, Wynn, and Ervin deprived her rights in the course of her appeal in the *Monroe* litigation, and she asserted she was entitled to declaratory relief against these defendant "to protect her rights on appeal in state court" and she sought damages against each defendant.

In response to the filing of the Joined Complaint [DE-9], the court issued an order on May 25, 2012, observing that Dalenko may file an amended complaint once as matter of course

5

pursuant to Federal Rule of Civil Procedure 15(a), and she appears to have attempted to do this through the filing of the "Joined Complaint." May 25, 2012 Order [DE-13]. The court observed that "[r]ather than filing a completely separate document with new allegations and newly-named defendants, however, Dalenko should have just filed one amended complaint which contains her allegations and claims against all the defendants." *Id.* Accordingly, the court ordered Plaintiff to file within 21 days, "one amended complaint which lists all of the defendants in the caption and contains all of her allegations and claims." *Id.* Plaintiff apparently took this Order to be an invitation to file, without leave, a complaint which not only named the defendants in the Original Complaint and Joined Complaint, but also included additional defendants and claims, including those ostensibly asserted in the *Stephens I* action before Judge Howard. *See* Amended Complaint [DE-25]. Additionally, Plaintiff included allegations that Defendant F. Blare Williams, Assistant Clerk for the Wake County Superior Court, refused to docket a new action for libel against new parties relating to her prior civil action for libel in Wake County until Plaintiff complied with the 2001 Gatekeeper Order issued by the Wake County Superior Court. She also alleged that Wake County Sheriff Donald Harrison and "unnamed" prison officers and guards violated her rights while she was confined in the Wake County Jail from November 2 to November 9, 2009. After receiving leave of court, Plaintiff filed another amended complaint, denominated "Amended Complaint (II)" [DE-36], making substantially similar allegations.

Pertinent to the motions presently before the court, in the 25-page verified Amended Complaint II Plaintiff alleges the state judicial defendants "have numerously and repeatedly deprived her of her federally guaranteed rights under the U.S. Constitution in her state civil matters and appeals, for which they are liable to her in their official capacities" and seeks

6

declaratory relief "to establish her rights to protect her property, her civil liberties, and her freedom according to her rights guaranteed under the First, Fourth-Eighth, and Fourteenth Amendments" to the United States Constitution. Amended Complaint (II) [DE-57] p. 23. Additionally, Plaintiff seeks monetary relief against these state judicial defendants in their individual capacities.

The state judicial defendants filed a Motion to Dismiss [DE-41] on July 26, 2012, seeking to dismiss the claims against them pursuant to Rules 12(b)(1), (2), (5), and (6) of the Federal Rules of Civil Procedure on the grounds that (1) this court lacks jurisdiction over the subject matter of the Plaintiff's claims; (2) the plaintiff failed to properly effect service of process on the state judicial defendants; (3) the state and appellate court judges named as defendants are entitled to absolute judicial immunity from the plaintiff's claims, and (4) the plaintiff's claims for monetary relief are barred by the Eleventh Amendment to the United States Constitution. After receiving an extension of time to file a response to the Motion to Dismiss, Plaintiff instead filed a Motion to Strike Insufficient Defenses [DE-56] pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. She then sought, and was allowed by the court, three additional extensions of time to file a response to the Motion to Dismiss, which she filed on October 15, 2012. The state judicial defendants have filed a response to the Motion to Strike, to which Plaintiff has filed a reply, and have chosen not to file a reply in support of their Motion to Dismiss. These motions are therefore ripe for ruling.

## II. ANALYSIS

### A. Motion to Strike

Plaintiff moves to strike the state judicial Defendants' defenses pursuant to Rule 12(f),

7

arguing that the "Motion to Dismiss with a Memorandum filed on behalf of judicial defendants is frothed with gross misrepresentation of fact without evidentiary support to invoke Rule 12(b) defenses, which do not apply, contrived presumptions of law based on twisted facts and oversights, and irrelevant references to matters outside the pleadings." Mem. in Support of Mot. to Strike [DE-57] at p. 3. In other words, she asserts the defenses presented in the state judicial Defendants' motion to dismiss are insufficient, and she seeks to strike them from the Motion to Dismiss.

Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (quoting A. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §1380 (2d ed. 1990)).

Plaintiff's Motion to Strike [DE-56] is DENIED. As the plain text of Rule 12(f) indicates, the rule allows a district court "to strike from a *pleading*" an insufficient defense. FED. R. CIV. P. 12(f) (emphasis added). Rule 7(a) defines a "pleading" as (1) a complaint, (2) an answer, (3) a reply to a counterclaim, (4) an answer to a cross-claim, (5) a third-party complaint, (6) a third-party answer, and (7) if the court orders one, a reply to an answer. FED. R. CIV. P. 7(a). The state judicial Defendants' Motion to Dismiss and memorandum in support thereof is not a "pleading" within the meaning of the Federal Rules of Civil Procedure, and therefore Rule 12(f) is inapplicable. *See Kalos v. Law Offices of Eugene A. Seidel, P.A.*, No. 1:09cv833(JCC), 2009 WL 3583606 at *5 (E.D.Va. Oct. 26, 2009) (denying plaintiffs' motion to strike defendants'

8

motion to dismiss because "neither a motion to dismiss nor a memorandum in support thereof constitutes a pleading within the meaning of Rule 12(f)"); *Jones v. Dept. of Navy*, No. 4:07-CV-165-F, 2008 WL 1967497 at *2 (E.D.N.C. May 5, 2008) (denying the defendant's motion to strike various motions filed by the plaintiff because motions "are not included in the definition of 'pleadings' under the Federal Rules of Civil Procedure").

## B. Motion to Dismiss

### 1. Standards of Review

Subject matter jurisdiction is both a Constitutional and statutory requirement which restricts federal judicial power to a limited set of cases and controversies. Thus, "no action of the parties can confer subject matter jurisdiction on a federal court." *Ins. Corp. of Ir. V. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). The party seeking federal jurisdiction has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). When a defendant challenges subject matter jurisdiction, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id. See also, Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999).

A motion to dismiss for insufficient service of process is permitted by Rule 12(b)(5) of the Federal Rules of Civil Procedure. Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4. *O'Meara v. Waters*, 464 F.

9

Supp. 2d 474, 476 (D. Md. 2006). Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court. *Id.* (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963) and *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). When there is actual notice, failure to strictly comply with Rule 4 may not invalidate the service of process; however, plain requirements for the means of effecting service of process may not be ignored. *Id.* (citing *Armco*, 733 F.2d at 1089).

Under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Where, as here, a court addresses the question of jurisdiction based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a *prima facie* showing of a sufficient basis for jurisdiction. *Id.* In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

The purpose of a motion to dismiss under Rule 12(b)(6), meanwhile, is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the " '[f]actual allegations must be enough to raise a right to relief

above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). A district court may allow a motion to dismiss based on a defendant's affirmative defense "if all facts necessary to the affirmative defense 'clearly appear [] on the face of the complaint.' " *Goodman v. Praxair*, 494 F.3d 458, 463 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). *See also Peal v. North Carolina Farm Bureau Mut. Ins. Co., Inc.*, 221 F. Supp. 2d 508, 512 (E.D.N.C. 2008) (explaining that a motion to dismiss will be allowed "when the face of the complaint reveals the existence of a meritorious affirmative defense, such as federal preemption").

### 2. Preclusion

At the outset, the court observes that some of the claims Plaintiff asserts in this latest action against state judicial officials in federal court are barred by the principles of issue preclusion, or *collateral estoppel*. In "special circumstances," a court may *sua sponte* raise the issues of preclusion. *Arizona v. California*, 530 U.S. 392, 412 (2000). Preclusion includes both issue preclusion, or *collateral estoppel*, and claim preclusion, or *res judicata*. Under the latter, a prior judgment on the merits between the same parties precludes litigation of matters that were or

might have been adjudicated in the earlier suit. *In re Varat Enterprises, Inc.*, 81 F.3d 1310,

1314-15 (4th Cir. 1996). The former, *collateral estoppel*, "operates to bar subsequent litigation

of those legal and factual issues common to both actions that were 'actually and necessarily

determined by a court of competent jurisdiction in the first litigation.' " *Id.* at 1315 (quoting

*Montana v. United States*, 440 U.S. 147, 153 (1979)). Such "special circumstances" justifying

the *sua sponte* application of preclusion principles exist where, for example, the court is "on

notice that it has previously decided the issue presented." *Arizona*, 530 U.S. at 412.     "This

result is fully consistent with the policies underlying res judicata: it is not based solely on the

defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the

avoidance of unnecessary judicial waste." *Id. See also Eriline Co. S.A. v. Johnson*, 440 F.3d

648, 655 (4th Cir. 2006) (recognizing that "certain affirmative defenses," like *res judicata*,

"implicate important institutional interests of the court, and may sometimes be properly raised

and considered *sua sponte* "); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (determining that

district court's raising of the issue of *collateral estoppel* on its own did not require reversal

because of the "strong public policy in economizing the use of judicial resources of avoiding

relitigation"); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) ("[W]e have recognized that

courts, in the interest of judicial economy, may raise the issue of preclusion *sua sponte* even

when a party fails to do so.").

    "Collateral estoppel or issue preclusion applies to jurisdictional issues, as well as to other

issues." *Jones v. Law Firm of Hill and Ponton*, 141 F.Supp.2d 1349, 1356 (M.D. Fla. 2001)

(citing *North Georgia Electric Membership Corp. v. City of Calhoun,* 989 F.2d 429, 432-33

(11th Cir.1993); *Baris v. Sulpicio Lines, Inc.,* 74 F.3d 567, 571 (5th Cir.1996); *Oglala Sioux*

*Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co.*, 722 F.2d 1407 (8th

Cir.1983)). Accordingly, "[c]ollateral estoppel precludes a plaintiff from relitigating the same

jurisdictional question after the first suit was dismissed for lack of federal jurisdiction—even

though dismissal did not adjudicate the merits of the case." *Id.* (citing *North Georgia Electric

Membership Corp.*, 989 F.2d at 432-33; *Baris*, 74 F.3d at 571). *See also Carr v. Tillery*, 591

F.3d 909, 917 (7th Cir. 2010) ("[A] jurisdictional ruling on an issue that has been fully and fairly

adjudicated is barred from subsequent challenge by the doctrine of collateral estoppel."); *Kasap

v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("[U]nder

principles of issue preclusion, even a case dismissed *without* prejudice has preclusive effect on

the jurisdictional issue litigated."); *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d

1064, 1069 (4th Cir. 1993) ("[A] jurisdictional dismissal that does not constitute a judgment on

the merits so as to completely bar further transactionally-related claims still operates to bar

relitigation of issues actually decided by that former judgment.").

> Under federal law, collateral estoppel applies where the five following criteria are met:
>
> (1) The "issue sought to be precluded is identical to the one previously litigated; "
> (2) The "issue was actually determined in the prior proceeding;"
> (3) Determination of the issue was "a critical and necessary part of the decision in the prior proceeding;"
> (4) The "prior judgment is final and valid" and
> (5) The "party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum."

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2005) (quoting *Sedlack v.

Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)). This court finds that these five

requirements are met in this case with regard to this court's previous decision in *Stephens I* and

Plaintiff's claims against Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr., which arise out of their actions in the course of the *N&O* state court proceedings.

First, in *Stephens I,* Judge Howard dismissed Plaintiff's claims asserted in that action against Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr., on the basis of the *Rooker-Feldman*[3] doctrine. Specifically, in *Stevens I,* Judge Howard observed that "[i]n the light most favorable to the plaintiff, she has commenced the instant federal action alleging fraud, deprivation of property rights in the sum of $100,758.40, barred access to the courts and imprisonment to deter from making a petition for redress, based on actions taken on the part of various judicial officials and orders entered in the above referenced state civil action." July 11, 2011, Order, *Stephens I,* No. 5:10-cv-432-H. Judge Howard dismissed Plaintiff's claims against the judicial defendants for lack of jurisdiction because

> Plaintiff's complaint purports to have this court review the actions and/or judgment of the state court, a role which is not within the jurisdiction of the federal district court. The appellate review of state-court decisions lies only within the state appellate system and then in the United States Supreme Court, not with the federal district court. . . . Plaintiff's complaint fails to raise any claims independent of her dissatisfaction with the state-court judgment and is, therefore, barred by the *Rooker-Feldman* doctrine. . . .
>
> The court has also reviewed plaintiff's purported amended complaint. The court need not decide whether plaintiff's amended complaint was timely filed within the time periods specified in Federal Rule of Civil Procedure 15(a) because the court finds the amendment to be futile. Even assuming that the complaint was timely, the *Rooker-Feldman* doctrine still bars this matter.

*Id.* at pp. 4-6 (dismissing Plaintiff's claims for lack of jurisdiction) (internal citations omitted).

Notably, in *Stephens I* Plaintiff alleged that Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr., all deprived her of due process rights by their actions in the

---

[3] The *Rooker-Feldman* doctrine is discussed in more detail below.

*N&O* litigation and in so doing, acted without subject matter jurisdiction or authority. *See* Amended Complaint, *Stephens I*, No. 5:10-cv-432-H at ¶¶ 41-48, 54-57, 60-66, 70-76, 92-99, 114-127, 153, "Third Claim," "Fourth Claim," "Fifth Claim" and "Sixth Claim." The claims asserted in *Stephens I* mirror in all relevant respects the claims Plaintiff alleges in the instant action against Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr. arising out of the *N&O* litigation. *See* Amended Complaint II [DE-36] at pp. 2-5, ¶¶ 39-46, 92-105, 119, 120, 121, 124, First Claim, Second Claim. Accordingly, in *Stephens I*, Judge Howard resolved precisely the same question of jurisdiction that is at issue here. The *Rooker-Feldman* issue was actually determined and was the primary basis for the dismissal of Plaintiff's claims arising out of the *N&O* state court litigation. The court therefore concludes the first three requirements for *collateral* estoppel have been met.

*Stephens I* is also a final and valid judgment, which satisfies the fourth requirement for collateral estoppel. Although Plaintiff in the first page of the Amended Complaint II suggests that Rule 41(b)[4] allows her to refile the *Stephens I* claims, Rule 41(b) does nothing to preclude the application of collateral estoppel. 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4436 ("Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question. If it seems necessary to rebut the sophistic argument that preclusion cannot arise from the judgment of a court that admits to a lack of jurisdiction, comfort may be found in the notion that a court has jurisdiction to determine its own

---

[4] Rule 41(b) provides that a dismissal order for lack of jurisdiction is not an adjudication on the merits.

jurisdiction. The provision in Rule 41(b) that dismissal for lack of jurisdiction does not operate as an adjudication on the merits does nothing to change this result."). Finally, Plaintiff had a full and fair opportunity to litigate the issue of subject matter jurisdiction in *Stephens I*, which satisfies the fifth requirement for *collateral estoppel*. She made substantially similar allegations in her amended complaint in that action, which Judge Howard reviewed and found futile. Accordingly, the court finds that Plaintiff is precluding from relitigating her claims against Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr. which arose out of their actions in the course of the *N&O* litigation.

### 2. *Rooker-Feldman*

In support of their Motion to Dismiss, the state judicial Defendants also contend that Plaintiff's claims against them must be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Specifically, Defendants argue that Plaintiff's constitutional claims against them in the instant action are "essentially seeking appellate review of the orders and decisions entered by the North Carolina trial and appellate courts to determine if they were erroneously entered." Mem. in Support of Mot. to Dismiss [DE-42] p. 8. To the extent that Plaintiff is seeking declaratory relief against the state judicial Defendants, the court agrees.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the United States Supreme Court held that a litigant who lost in state court could not seek review of the state court judgment in a federal district court. *Id.* at 415-16. In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court reaffirmed the basic rule laid down in *Rooker* and further concluded that federal district courts do not have subject matter jurisdiction over claims the state court did not directly decide, but that are nevertheless "inextricably intertwined" with state court decision.

16

*Id.* at 486-87; *see also Plyer v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (explaining the "inextricably intertwined" language from *Feldman*). The *Rooker* and *Feldman* courts both reasoned that federal law lodges appellate jurisdiction over state court judgments exclusively in the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 283 (2005)(explaining that in *Rooker* and *Feldman* the Court "emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively this Court").

In *Exxon*, the Supreme Court significantly narrowed the scope of the *Rooker-Feldman* doctrine. Prior to *Exxon*, lower federal courts had interpreted *Rooker-Feldman* to mean that the loser in state court "was barred from bringing suit in federal court alleging the same claim or a claim that could have been brought in the state proceedings." *Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 713 (2006). In *Exxon*, the Supreme Court confined the *Rooker-Feldman* doctrine to "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284.

Accordingly, post-*Exxon*, the Fourth Circuit Court of Appeals has explained:

> Whereas in [cases pre-*Exxon*] we examined whether the state-court loser who files suit in federal court is attempting to litigate claims he either litigated or could have litigated before the state court, *Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply. If, on the other hand, he is challenging the state-court decision, the *Rooker-Feldman* doctrine applies. It is important to note that the *Rooker-Feldman* doctrine applies in this second situation even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court. A claim seeking redress for an injury caused by the state-court decision itself—even if the basis of the claim

was not asserted to the state court–asks the federal court to conduct a review of the state-court decision.

*Davani*, 434 F.3d at 718-19 (footnote and citations omitted). Thus, the phrase "inextricably intertwined" "does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." *Id.* at 719.

Consequently, the task for this court is to determine whether the challenged claims satisfy the four essential elements of the *Rooker-Feldman* doctrine, as explained by the Court in *Exxon*. Namely, are the claims (1) brought by a state-court loser (2) complaining of injuries caused by a state-court judgment (3) rendered before the instant proceedings commenced and (4) inviting this court's review and rejection of the state court judgment? To the extent that Plaintiff seeks declaratory relief against the state judicial defendants, each of these elements is met.

In the Amended Complaint (II), Plaintiff alleges that the various state judicial Defendants took actions and issued rulings without affording Plaintiff notice or an opportunity to be heard or without a fair hearing. *See* Amended Complaint (II) [DE-36] pp. 3-5. She seeks declaratory relief "to establish her rights to protect her property, her civil liberties, and her freedom according to her rights guaranteed under the First, Fourth-Eighth, and Fourteenth Amendments, U.S. Const." *Id.* at p. 23. She asks the court to issue "such appropriate Declaratory Relief that will protect [her] rights [from] further injury by these Defendants." *Id.* The court concludes that this request for declaratory relief can only be construed as a request for improper collateral review of the various state court decisions.

18

First, it cannot be disputed that Plaintiff's claim for declaratory relief satisfies the first and third elements of the *Rooker-Feldman* doctrine. Although Plaintiff contends that she is not a "state-court loser" because she prevailed in some issues in state court,[5] the allegations in the Amended Complaint (II) make clear that her current claims stem from actions which occurred in the course of the various state court proceedings and resulted in rulings which were unfavorable in some manner to her. In the context of those rulings, Plaintiff is a "state-court loser." Moreover, it is undisputed that all of these rulings were rendered prior to the commencement of the instant case.

Second, Plaintiff satisfies the second element of the *Rooker-Feldman* doctrine: she is complaining of injuries from a state court judgment. The court recognizes Plaintiff argues that she is not complaining of the various state court decisions issued by the state judicial Defendants, but rather "the fact that they deprived her of prior notice or an opportunity to be heard and other rights prior to their entry." Mem. in Opp. to Mot. to Dismiss [DE-67] p. 5. She contends that regardless of whether the state judicial Defendants were correct in their rulings, she already had been injured in her rights. *Id.* p. 6. If Plaintiff is seeking declaratory relief stating that the various defendants violated her rights in the past, however, such declaratory relief is not available. *See Johnson v. McCuskey*, 72 Fed. Appx. 475, 477 (7th Cir. 2003) (finding that a plaintiff who asked district court to declare that judges acted improperly in various way when deciding a motion for a change of venue was "not seeking declaratory relief in the true legal

---

[5] Specifically, Plaintiff contends that she prevailed in the arbitration proceedings underlying the *Peden* state court action and she was successful on some issues on a motion for summary judgment in the *N&O* state court action. Mem. in Opp. to Mot. to Dismiss [DE-67] p. 13.

sense" because declaratory judgments are not meant to simply to proclaim that one party is liable to another"); *Andrews v. Paxson*, Civil Action No. 3:11-CV-518, 2012 WL 526290, at *3 (E.D. Va. Feb. 16, 2012) (explaining that plaintiff was not entitled to declaratory relief that a state court judge violated his constitutional rights through her judicial conduct because plaintiff was not seeking to define the legal rights and obligations of the parties).

Based on the overall allegations in the Amended Complaint (II), however, the court discerns that Plaintiff seeks, *inter alia*, a declaration that certain Gatekeeping Orders are not applicable to her and that the state court must rule on certain matters she contends are still outstanding. *See* Amended Complaint (II) p. 2 (alleging that two motions in the *Peden* action have been pending unheard since 2007 and 2008 and that Defendant Stephens "continues to obstruct Dalenko's access to the courts to assert her property rights . . . pursuant to his filing prohibitions"); p. 3 (alleging that "issues of fact remain untried" in the *N&O* action); pp. 3-4 (alleging that the appellate judge Defendants ruled that certain Gatekeeping orders applied to her filings); ¶ 81 (alleging, *inter alia*, the appellate judge Defendants in the *Monroe* action set a precedent to deprive her of her fundamental due process rights to access to the courts); ¶ 96 (alleging, *inter alia*, that appellate judge Defendants in the *N&O* action deprived her of due process rights by "striking" motions for failure to comply with a Gatekeeping Order); ¶ 111 (alleging that Defendant Williams violated Plaintiff's rights by refusing to docket Plaintiff's latest libel case until Plaintiff complies with the Gatekeeping Order). This inevitably leads to the conclusion that to the extent Plaintiff seeks declaratory relief, she *is* claiming injury from the various decisions of the superior court and North Carolina Court of Appeals–namely, the decisions that certain Gatekeeping Orders apply to her in all matters. Moreover, in so doing,

20

Plaintiff undoubtedly seeks review and rejection of the various decisions by the North Carolina state courts determining that the Gatekeeping Orders are applicable. *See Bolden v. City of Topeka, Ks.*, 441 F.3d 1129, 1143 (10th Cir. 2006) ("Appellate review–the type of judicial action barred by *Rooker-Feldman*–consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with the law."). This court is prohibited from doing, and accordingly to the extent that Plaintiff seeks declaratory relief, such relief is either unavailable to her or the court is without jurisdiction to consider her claims.[6] Plaintiff's first claim for relief is therefore DISMISSED as to the state judicial defendants.[7]

---

[6] This also provides an independent reason, other than *collateral estoppel*, for this court's determination that it lacks jurisdiction over Plaintiff's claims for declaratory relief against Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr., arising out of the *N&O* litigation.

[7] In so ruling, the court recognizes that Plaintiff contends the "reasonable opportunity" exception to *Rooker-Feldman*, previously applied by the Fourth Circuit (and other courts) pre-*Exxon,* saves her claims. Namely, the Fourth Circuit previously explained that the *Rooker-Feldman* doctrine does not apply where a plaintiff did not have a reasonable opportunity to raise her federal claim in state proceedings. *Brown v. Breckenridge*, 211 F.3d 194, 200-01 (4th Cir. 2000). This was in line with the "expansive" reading the Fourth Circuit accorded to the *Rooker-Feldman* doctrine pre-*Exxon*, one that was the equivalent to a "jurisdictional doctrine of res judicata." *See Davani*, 434 F.3d at 717-19 (recognizing that pre-*Exxon*, the Fourth Circuit examined "whether the state-court loser who files suit in federal court is attempting to litigate claims he either litigated or could have litigated before the state court" but that is no longer the test). Now that the Supreme Court has clarified the reach of *Rooker-Feldman*, this court agrees with the observation of the Sixth Circuit Court of Appeals that the "reasonable opportunity" exception is no longer applicable. *See Abbott v. Michigan*, 474 F.3d 324, 330, 330 n. 6 (6th Cir. 2007) (stating that "[w]e believe that the Supreme Court's recent decisions do not support the plaintiffs' asserted 'reasonable opportunity' exception to the *Rooker-Feldman* doctrine" and that "[i]t appears to us that many of the opinions in which courts purported to apply an exception to the *Rooker-Feldman* doctrine based on the lack of a reasonable opportunity to litigate a claim in state court would have reached the same result had those courts instead applied the doctrine in [*Exxon's*] narrow fashion.").

### 3. Judicial Immunity

Plaintiff also alleges a claim for damages against the state judicial Defendants in their individual capacities. The court recognizes that to the extent that Plaintiff seeks compensatory damages for the alleged deprivations of due process occurring "before" the issuance of the various state decisions, some courts would conclude that her claim falls outside the realm of the *Rooker-Feldman* doctrine. *See Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 171 (3d Cir. 2010) (concluding that a plaintiff's claim that opposing party in previous state court litigation, attorneys and state-court judges engaged in an extensive conspiracy which forced plaintiff to litigate in a "rigged system" in violation of plaintiff's constitutional rights was not barred by *Rooker-Feldman*). This court is not of the opinion that Plaintiff's allegations against the various state judicial Defendants implicate the violation of some independent right separate from the state court judgments, however, and thus believes that Plaintiff's claims for damages against the various state judicial Defendants are also barred by *Rooker-Feldman*. Even if this court assumes that Plaintiff's claims for monetary damages against the state judicial Defendants are not barred by the *Rooker-Feldman* doctrine, however, the claims are still barred by absolute judicial immunity.

It is well-established that judges, in exercising the authority vested in them, are absolutely immune from civil lawsuits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). Judicial immunity applies to judicial action taken in error, done maliciously, or in excess of authority. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Essentially, a judge is entitled to absolute

22

immunity if the judge acted in his judicial capacity and had jurisdiction over the subject matter. *King v. Myers*, 973 F.2d 354, 356-57 (4th Cir. 1992). Accordingly, a plaintiff alleging claim for money damages against a judge can overcome absolute judicial immunity only by showing (1) the judge's actions were taken outside of the judge's judicial capacity or (2) the judge acted in the complete absence of jurisdiction. *Id.*

With regard to the first inquiry–whether the challenged conduct is a "judicial act"–the court must consider "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." *Id.* at 357 (citing *Stump*, 435 U.S. at 362). Here, Plaintiff does not dispute that Defendants Stephens,[8] Joseph, Pittman, Titus, Steelman, Jackson, Stroud, Robert C. Hunter, Wynn, Ervin, and Robert N. Hunter, Jr., all were acting in a judicial capacity while presiding over her various state-court lawsuits or, in Stephens' case, assigned judges to her cases. *See Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985) (determining that a chief judge's act of assigning cases is a judicial act).

With regard to the second inquiry, Plaintiff vehemently argues that these state court judges acted in the complete absence of jurisdiction. A distinction must be drawn, however, "between acts that are performed in 'excess of jurisdiction' and those performed in the 'clear absence of all jurisdiction over the subject matter' with the former type of act accorded immunity." *King*, 973 F.2d at 356-57 (citing *Stump*, 435 U.S. at 356 n.6). Thus, the court must

---

[8] To the extent that Plaintiff's allegations against Judge Stephens could be construed as including non-judicial acts, the court finds that the conclusory and speculative allegations do not state a plausible claim for relief. *See* Amended Complaint (II) ¶¶ 65-66 (alleging upon information and belief that Stephens instructed another judge to rule against Plaintiff); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (explaining that a court may reject "bald" "conclusory" allegations).

examine " 'whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him,' and in answering that question, 'the scope of the judge's jurisdiction must be construed broadly . . . .' " *Id.* at 357 (quoting *Stump*, 435 U.S. at 356). Moreover, "it is immaterial that his challenged judicial act may have been unauthorized by the laws which govern his conduct." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). If a judge "exceeds his authority, his action is subject to correction on appeal or other authorized review, but it does not expose him to a claim for damages in a private action or put him to the trouble and expense of defending such an action." *Id.* Accordingly, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority" or subject to "grave procedural errors." *Stump*, 435 U.S. at 356-58. Thus, for example, a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in *excess* of his jurisdiction, whereas a probate court judge would not be immune from liability if he tried a criminal case because he clearly lacked all subject matter jurisdiction. *Id.* at 357 n. 7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

In assessing whether the state superior court judge defendants acted in the complete absence of jurisdiction, it bears noting that Plaintiff states repeatedly that she is not suing judges for their orders and opinions rendered in her various trips through the state court system; rather, she is suing because they allegedly deprived her of various rights, such as due process, prior to issuing those decisions. *See* Mem. in Support of Resp. to Mot. to Dismiss [DE-67] p. 5 ("It is not their decisions [Plaintiff] complains of, but the fact that they deprived her of prior notice or an opportunity to be heard and other rights prior to their entry."); p. 6 ("Regardless of whether defendants decided correctly or not, injury to the Plaintiff in her rights had already occurred. . . .

24

Plaintiff does not rely on the substance of their decisions to support her claims, only the deprivation of rights that preceded them."); p. 14 (arguing that Plaintiff is seeking relief for injury to her in rights "*before* [the orders and opinions] were entered") (emphasis in original). The actions of the state superior court judge defendants of which Plaintiff complains all occurred, of course, during the course of civil actions she herself filed in state court. The State of North Carolina vests its judicial power exclusively in its General Court of Justice, *see* N.C. Const. Art. IV, Sec. 1; N.C. Gen. Stat. § 7A-3, and subject matter jurisdiction over civil actions is statutorily conferred on the superior court and district court divisions as the trial divisions of the General Court of Justice. *See* N.C. Gen. Stat. § 7A-240 ("Except for the original jurisdiction in respect of claims against the State which is vested in the Supreme Court, original general jurisdiction of all justiciable matters of a civil nature cognizable in the General Court of Justice is vested in the aggregate in the superior court division and the district court division as the trial divisions of the General Court of Justice"). *See also Harris v. Pembaur*, 84 N.C. App. 666, 667-68, 353 S.E.2d 673, 675 (1987) (explaining that "[s]ubject matter jurisdiction refers to the power of the court to deal with the kind of action in question" and observing that it is "evident that . . . the trial courts of North Carolina have subject matter jurisdiction over 'all justiciable matters of a civil nature.' "). Plaintiff does not suggest that her various state court actions were not "justiciable matters;" all indications are that they were. It cannot be said, therefore, that any of the superior court judge defendants, while acting in the course of Plaintiff's various state court actions, proceeded in the "complete absence of jurisdiction." Plaintiff's allegations that decisions[9] were rendered out of

_____

[9] Plaintiff's allegations and arguments are inconsistent, of course. In one breath she argues that she is not challenging various orders and opinions of the state superior court judges, and in the next, she is arguing that these judges lacked subject matter jurisdiction because the

session or while her various cases were on appeal do nothing to change this result. *See Chu*, 771 F. 2d at 81 ("There is no [absolute] immunity, of course, if the judge undertakes to act in an area where he has no subject matter jurisdiction, but it is immaterial that his challenged judicial act may have been unauthorized by the laws which govern his conduct."); *Billingsley v. Kyser*, 691 F.2d 388, 389-90 (8th Cir. 1982) (finding that although a state court judge may have lacked authority to amend a criminal defendant's sentence once the defendant filed a notice of appeal, the judge nevertheless "acted within his judicial capacity and within his general jurisdiction" because he was empowered to rule on criminal matters).

Nor do Plaintiff's allegations establish that the state appellate judge defendants acted in complete absence of subject matter jurisdiction. Plaintiff alleges that at least some of the appellate state judge defendants acted without subject matter jurisdiction by deciding a contested issue of fact–the applicability of the 2001 Gatekeeper Order–and by "collaterally review[ing]" the 2001 Gatekeeper Order. Amended Compl. (II) ¶¶ 79, 82-84. A plain reading of the judges' opinion, however, belies Plaintiff's assertion. *See Dalenko v. Monroe*, 197 N.C. App. 231, 676 S.E.2d 670, 2009 WL 138333 at **5-7.[10] Interpreting the applicability of a gatekeeping order is not an "issue of fact," nor does recognizing a gatekeeping order's existence and applicability amount to "collateral review" of it.

In sum, the court finds that Plaintiffs' allegations against the state judge Defendants all concern judicial acts which were not taken in the complete absence of jurisdiction, and therefore

_____

decisions were rendered "out of session" of court.

[10] Again, the court references the *Monroe* opinion because it is integral to and explicitly relied on in the Amended Complaint (II) and Plaintiff does not challenge its authenticity. *See infra* note 2.

these Defendants are entitled to absolute judicial immunity. Plaintiff's claims for damages against these state judge Defendants in their individual capacities therefore are DISMISSED.[11]

### 4. Quasi-judicial immunity

The court also finds that Defendant Williams, as an assistant clerk of court for Wake County, is entitled to quasi-judicial immunity as to Plaintiff's claim for damages against him in his individual capacity. It is well-settled that court clerks are accorded derivative absolute immunity when they act in obedience to a judicial order or under the court's direction. *McCray v. State of Md.*, 456 F.2d 1, 5 n.11 (4th Cir. 1972) ("Since judges are immune from suit for their decisions, it would be manifestly unfair to hold liable the ministerial officers who merely carry out that judicial will."). Here, Plaintiff only alleges actions that Defendant Williams refused to docket her latest state court action for failure to comply with the 2001 Gatekeeping Order. This action, taken in accordance with the 2001 Gatekeeping Order itself, entitles Williams to quasi-judicial immunity. Plaintiffs' protestations to the contrary are unavailing. Accordingly, Plaintiffs' claim against Defendant Williams in his individual capacity is DISMISSED.

### 5. Service of Process

Because the court has concluded that all of Plaintiff's claims against the state judicial Defendants must be dismissed because of *collateral estoppel*, pursuant to the *Rooker-Feldman* doctrine, and/or because of the application of judicial immunity, the court declines to address the parties' arguments regarding service of process.

---

[11] This also provides an independent reason, other than *collateral estoppel*, for this court's determination that it lacks jurisdiction over Plaintiff's claims for relief against Defendants Stephens, Pittman, Titus, Jackson, Wynn, and Robert N. Hunter, Jr. arising out of the *N&O* litigation.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike [DE-56] is DENIED. The Motion to Dismiss [DE-41] is ALLOWED, and Plaintiff's claims against Defendants Donald W. Stephens, Shannon R. Joseph, William R. Pittman, Kenneth C. Titus, Sanford L. Steelman, Jr., Barbara A. Jackson, Donna S. Stroud, Robert C. Hunter, James A. Wynn, Jr., Sam Ervin, IV, Robert N. Hunter, Jr., and F. Blare Williams are DISMISSED. Plaintiff's Protective Motion to Extend Time for Service on State Officials in their Individual Capacities [DE-70] is DENIED as moot. The Clerk of Court is DIRECTED to continue the management of this case.

SO ORDERED. This the 8 day of January, 2013.

James C. Fox

JAMES C. FOX
Senior United States District Judge