UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-122-F

CAROL DALENKO,                      )
                 Plaintiff,          )
                                     )
        v.                           )          O R D E R
                                     )
DONALD W. STEPHENS, *et al.*         )
                 Defendants.         )

This matter is before the court on the Motion to Dismiss for Failure to State a Claim [DE-100] filed Defendants Donald E. Harrison and "unnamed prison officers and guards." Also pending before the court are the Plaintiff's Motion for Entry of Default [DE-102], Motion to Strike [DE-104], Motion to Extend Time to Amend Claims with Request for Clarification [DE-112], Motion for Relief [DE-115], and Amended Motion to Extend Time [DE-123]. For the reasons set forth below, Plaintiff's Motion for Entry of Default [DE-102], Motion to Strike [DE-104], Motion for Extension of Time to Amend [DE-104] and Motion for Relief [DE-115] are all DENIED; Plaintiff's Motion for Extension of Time [DE-123] is ALLOWED; and Defendants' Motion to Dismiss [DE-100] is DENIED in part and ALLOWED in part.

## I. PERTINENT PROCEDURAL AND FACTUAL HISTORY

Plaintiff, proceeding *pro se*, initiated the instant action by filing a Complaint [DE-1] on March 7, 2012, alleging that Defendants Donald W. Stephens, Shannon R. Joseph, William R. Pittman, Kenneth C. Titus, Sanford L. Steelman, Jr., Barbara A. Jackson, Donna S. Stroud, all state judicial officers, acted under color of state law to deprive her of property, civil liberties, and freedom

without prior notice or meaningful opportunity to be heard in violation of her due process rights under the Fourteenth Amendment throughout the course of litigation in state court. Compl. [DE-1]. She alleged that she is entitled to declaratory relief "to protected her federally guaranteed rights in state superior court" and sought damages against Defendants individually. *Id.*

On May 22, 2012, Plaintiff filed a "Joined Complaint" [DE-9] alleging claims against North Carolina Court of Appeals Judges Robert C. Hunter, James A. Wynn, Jr., and Sam Ervin, IV. Specifically, Plaintiff alleged Judges Hunter, Wynn, and Ervin deprived her rights in the course of her appeal in state court litigation, and she asserted she was entitled to declaratory relief against these defendant "to protect her rights on appeal in state court" and she sought damages against each defendant.

In response to the filing of the Joined Complaint [DE-9], the court issued an order on May 25, 2012, observing that Dalenko may file an amended complaint once as matter of course pursuant to Federal Rule of Civil Procedure 15(a), and she appears to have attempted to do this through the filing of the "Joined Complaint." May 25, 2012 Order [DE-13]. The court observed that "[r]ather than filing a completely separate document with new allegations and newly-named defendants, however, Dalenko should have just filed one amended complaint which contains her allegations and claims against all the defendants." *Id.* Accordingly, the court ordered Plaintiff to file within 21 days, "one amended complaint which lists all of the defendants in the caption and contains all of her allegations and claims." *Id.*

Plaintiff apparently took this Order to be an invitation to file, without leave, a complaint which not only named the defendants in the Original Complaint and Joined Complaint, but also included additional defendants and claims, including those ostensibly asserted in litigation before

7

Senior United States District Judge Malcolm Howard in *Dalenko v. Stephens, et al.*, 5:10-CV-432-H (hereinafter *Stephens I*), which was dismissed by Judge Howard in an order filed on July 7, 2011 for lack of jurisdiction. *Stephens I.*, 5:10-CV-432-H, July 7, 2011, Order [DE-60]. Additionally, Plaintiff included allegations that Defendant F. Blare Williams, Assistant Clerk for the Wake County Superior Court, refused to docket a new action for libel against new parties relating to her prior civil action for libel in Wake County until Plaintiff complied with a 2001 Gatekeeper Order issued by the Wake County Superior Court. She also alleged that Wake County Sheriff Donald Harrison and "unnamed" prison officers and guards violated her rights while she was confined in the Wake County Jail from November 2 to November 9, 2009. After receiving leave of court, Plaintiff filed another amended complaint, denominated "Amended Complaint (II)" [DE-36], making substantially similar allegations. Summons were issued for Donald Harrison and unnamed prison officers and guards on July 11, 2012 [DE-32].

The state judicial defendants moved to dismiss the claims against them. In an order filed on January 8, 2013 [DE-94], the court allowed the state judicial defendants' motion to dismiss, and specifically dismissed Plaintiff's claims against them on the basis of collateral estoppel, the *Rooker-Feldman* doctrine, judicial immunity, and quasi-judicial immunity.

Defendant Harrison, on behalf of himself and any unnamed prison guards, also moved to dismiss the complaint against them, on the basis of insufficient service of process, which the court denied in an order filed on June 28, 2013 [DE-98]. Harrison and the "unnamed prison officers and guards" filed their Answer [DE-99] and a Motion to Dismiss for Failure to State a Claim [DE-100] on July 17, 2013. That same date, Plaintiff filed a Motion for Entry of Default [DE-102], and one day later, she filed a Motion to Strike [DE-104] the Answer and Motion to Dismiss filed by Harrison.

3

Thereafter, Plaintiff filed a "Motion to Extend Time to Respond or Otherwise Plead in Response Re:" Harrison's motion to dismiss. The Clerk of Court allowed the motion, and granted Plaintiff through September 11, 2013, to file a response to the motion to dismiss. *See* August 7, 2013 Order [DE-108]. On September 11, 2013, Plaintiff filed her response [DE-110] to the motion to dismiss, along with a motion for extension of time to file a memorandum in support of her response to the motion to dismiss [DE-111]. She also filed a "Motion to Extend Time to Amend Claims With Request for Clarification" [DE-112], wherein she asks for additional time "to 'plead in response' to [Harrison's] Motion to Dismiss, by amending the claims against [Harrison and the unnamed prison guards] once of due course under Rule 15(a)(1)(B)."

On November 7, 2013, Plaintiff filed a Motion for Relief pursuant to Rule 60(b)(1) and (6) [DE-115], asking the court to reconsider its earlier decision dismissing her claims against the the state judicial defendants. She then sought, and received, two extensions of time to file a memorandum in support of her Motion for Relief, which she filed on November 22, 2013 [DE-120]. On January 3, 2014, she filed a "Supplemental Memorandum" [DE-122] in support of her Motion for Relief. She then filed an Amended Motion to Extend Time [DE-123] to deem her Supplemental Memorandum timely filed.

4

## II. MOTION FOR ENTRY OF DEFAULT AND MOTION TO STRIKE

Under Rule 55(a) of the Federal Rules of Civil Procedure, an entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Here, Plaintiff filed the Motion for Entry of Default the same day that Harrison and the unnamed guards filed the Answer and the Motion to Dismiss. Because these Defendants have not failed to plead or otherwise defend, entry of default is not appropriate under Rule 55(a). Plaintiff's Motion for Entry of Default [DE-102] is accordingly DENIED.

Plaintiff, nevertheless, also moves to strike the Answer and Motion to Dismiss, on the basis that they were filed two days late.[1] Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (quoting A. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §1380 (2d ed. 1990)).

As Harrison notes, Rule 12(f) does not explicitly allow for the striking of untimely pleadings. Additionally, this court is mindful of Fourth Circuit's admonition that "the clear policy of the

---

[1] The court denied Harrison's Motion to Dismiss for Insufficient Service on June 28, 2013; accordingly, under Federal Rule 12(a)(4)(A), Harrison's Answer to Plaintiff's Amended Complaint II was due within fourteen days. When considered in conjunction with Federal Rule 6(d), the deadline for Harrison to file the Answer and Motion to Dismiss was Monday, July 15, 2013. *See* Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E) or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."). Harrison filed the Answer and Motion to Dismiss on July 17, 2013.

5

[Federal] [R]ules [of Civil Procedure] is to encourage the disposition of claims on their merits." *United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982) (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). The court, therefore, declines to strike the Answer and Motion to Dismiss, especially when Plaintiff cannot credibly claim she has been prejudiced by the 48-hour delay in filing. *See Khadka v. Rajamani*, No. 1:08cv1320 (JCC), 2009 WL 910849, at *2 (E.D. Va. April 1, 2009) (denying the plaintiff's Rule 12(f) motion to strike an answer filed one day late because "its tardiness did not prejudice [the plaintiff] in the least" and allowing "the motion to strike would allow the plaintiff to avoid resolving this case on the merits"). Moreover, based on the reasons[2] stated in Harrison's opposition to Plaintiff's Motion to Strike, the court finds it appropriate to deem the Answer and Motion to Dismiss as timely filed. *Cf.* Fed. R. Civ. P. 55(c) ("For good cause shown, the court may set aside an entry of default . . . .); *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 420 (4th Cir. 2010) (observing that Rule 55(c)'s good cause standard is "more forgiving" than Rule 6(b)'s excusable neglect standard). Plaintiff's Motion to Strike [DE-104] is accordingly DENIED.

## III. MOTION TO DISMISS

Harrison, along with any "unnamed" parties whose identity is unascertained, moves to dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6) for failure to state a claim.

As a preliminary matter, the court notes that in addition to opposing the motion to dismiss on the merits, Plaintiff also argues that Defendants have waived their right to file such a motion

---

[2] Harrison's counsel asserts that he moved to the new Wake County Justice Center on Friday, June 28, 2013–the same day the court issued its order on the Motion to Dismiss for Insufficient Service of Process–and then inadvertently calculated the time for filing his responsive pleading as running from July 1, 2013. *See* Response [DE-107] p. 3.

under Rule 12(g) and under the doctrine of laches. The court finds Plaintiff's argument regarding laches to be without merit.

As to Rule 12(g), Plaintiff is correct that Rule 12(g)(1) provides that a Rule 12 motion may be joined to any other motion under the rule, and Rule 12(g)(2) imposes a limitation on filing successive motions, by providing that "*[e]xcept as provided in Rule 12(h)(2) or (3)*, a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its pre-answer motion." Fed. R. Civ. P. 12(g) (emphasis added). Accordingly, "Rule 12(g) requires the defendant to consolidate any Rule 12(b) defenses he may have in a single pre-answer motion." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 (3rd. ed. 2004). Because Harrison and the unnamed guards previously filed a motion to dismiss pursuant to Rule 12(b)(4) and (5), *see* [DE-83], Plaintiff contends that these Defendants have waived their right to file a Rule 12(b)(6) motion now.

Plaintiff overlooks Rule 12(h)(2), however, which provides that a Rule 12(b)(6) motion may be raised in any pleading, by motion for judgment on the pleadings, or at trial. Here, Harrison and the unnamed guards raised their affirmative defenses discussed in the motion to dismiss in the Answer [DE-99]. Under the plain terms of Rule 12(g)(2) and Rule 12(h)(2), the court finds that Harrison and the unnamed guards have not waived their Rule 12(b)(6) defense,[3] and the court will accordingly consider the merits of the motion.

---

[3] Even if it were somehow improper for Defendants to file the second motion to dismiss, the court would, alternatively, construe the motion as one for judgment on the pleadings pursuant to Rule 12(c). *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (treating a Rule 12(b)(6) motion filed after the defendants' answer was filed as a motion for judgment on the pleadings pursuant to Rule 12(c)). This, however, has no practical effect on the court's analysis, as the same standard is applied for a Rule 12(b)(6) or a Rule 12(c) motion. *See id.* ("[V]iewing the Defendants' motion as a Rule(c) motion does not have a practical effect upon our review, because we review the court's dismissal *de novo* and in so doing apply the standard for a Rule 12(b)(6) motion.").

## A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of the allegations in the complaint. A motion to dismiss under this rule determines only whether a claim is stated on the facts alleged; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[,]" but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Nor does the court accept as true "'unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (quoting *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n.26 (4th Cir. 2009)). When considering a motion to dismiss, the court must keep in mind that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the courts obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

8

**B.     Facts**

The facts, as alleged in Amended Complaint II and pertinent to Plaintiff's claims, are as

follows. On November 2, 2009, Plaintiff was ordered imprisoned for being in civil contempt for

violation of a gatekeeping order in state court. *See* Amended Complaint (II) [DE-36] p. 4. According

to Plaintiff, she

> was held in unusual solitary confinement in Wake County Jail. She was cruelly
> deprived of ordinary rights of inmates. Her urgent medical needs were neglected after
> she fell unconscious with high blood pressure on 11/4/2009. Guards (3) asked her,
> "Are you dead yet?", then slammed her cell door leaving her injured on the floor,
> saying, "Let us know if you die!"

*Id.*

Plaintiff also alleges:

> 106. Sheriff Harrison, and "Unnamed" guards and officers in the Wake County Jail
> under his supervision, subjected Dalenko to cruel and unusual punishment when she
> was calm and totally cooperative at all times, by holding her in solitary confinement
> under 24 bright lights, deprived her of ordinary rights of inmates without cause,
> including access to the canteen, a water cup, exercise, and recreation, and attempted
> to persuade her to take drugs (Klonopin).

> 107. Sheriff Harrison, and "Unnamed" guards and officers in the Wake County Jail
> under his supervision, were grossly and willfully negligent to Dalenko's health care
> and needs in a manner that exacerbated her cruel and unusual treatment: (1) when on
> her first physical exam on day 1, it was clear she needed immediate professional
> medical care when her blood pressure was dangerously high (176/98); (2) when she
> asked the meds nurse for a piece of bread or cooking to take with her Aleve for her
> arthritis because the Aleve was burning a hole in her stomach, and the Lieutenant
> who opened the cell door for the nurse refused the request, even though the nurse
> argued that "she needs it"; (3) when on day 3, she collapsed on the floor, said she
> needed help when 3 guards entered after a couple of hours asking her, "Are you dead
> yet?", then slammed the cell door leaving her lying on the floor without assistance
> or immediate medical care, saying in jest, "Let us know if you die.", not knowing
> from one day to the next when or if she would be released.

*Id.* pp. 20-21. Plaintiff brings a claim under 42 U.S.C. § 1983, alleging that Defendants violated her rights "guaranteed under the First, Fourth-Eighth, and Fourteenth Amendments, U.S. Const." *Id.* p. 23.

## C.    Discussion

Harrison and the "Unnamed" guards advance three separate arguments in support of their motion to dismiss. First, they contend that Plaintiff was required to exhaust her administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, and has failed to do so. They also contend that Plaintiff has failed to allege a waiver of immunity, and therefore any claim in tort against Harrison in his official capacity must be dismissed. Finally, they argue that Plaintiff has failed to allege sufficient facts to state a claim. The court will address the contentions in turn.

### 1.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a). "Prisoner" is defined by the PLRA to mean "any person incarcerated for detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). In an unpublished opinion, the Fourth Circuit has stated that a former prisoner who has been released is no longer considered incarcerated or detained for purposes of the exhaustion of administrative remedies requirement. *See Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) (per curiam) (unpublished opinion). This is in accord with every other circuit court of appeals that has addressed the issue. *See Lesesne v. Doe*, 712 F.3d 584, 877-88 (D.C. Cir. 2013); *Talamantes v.*

10

*Leyva*, 575 F.3d 1021, 1023-24 (9th Cir. 2009); *Norton v. City of Marietta*, 432 F.3d 1145, 1150-51 (10th Cir. 2005); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002); *Grieg v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999). Accordingly, "it is plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." *Cofield*, 247 F. App'x at 414.

Here, there is no indication that Plaintiff was a prisoner in custody of a jail or prison when she filed any of the complaints in this action. As such, the PLRA's exhaustion of administrative remedies requirement does not apply to this action, and Plaintiff's claims against Harrison and the unnamed guards will not be dismissed for failure to exhaust.

## 2. Immunity

Harrison also moves to dismiss any claims asserted against him in his official capacity arising in tort. It is true that under North Carolina law, "[t]he docetrine of sovereign immunity bars actions against public officials sued in their official capacities." *Beck v. City of Durham*, 154 N.C. App. 221, 229, 573 S.E.2d 183, 190 (2002). It is also true that sheriffs are considered public officials for purposes of sovereign immunity. *Summey v. Barker*, 142 N.C. App. 688, 691 544 S.E.2d 262, 265 (2001). Accordingly, courts have dismissed a plaintiff's common law state claims asserted against a public official in his official capacity where the plaintiff has failed to allege that the official has waived his sovereign immunity. *See, e.g., Robinson v. Bladen County Sheriff Dep't,*, No. 7:10-CV-146-BO, 2010 WL 4054389, at \*4 (E.D.N.C. Oct. 14, 2010) (dismissing the plaintiff's state law claims against sheriff and sheriff deputies in their official capacities where plaintiff failed to allege waiver of sovereign immunity through the purchase of liability insurance or through the purchase of a surety bond).

11

In this case, however, Plaintiff has not alleged any state law claims against Harrison. The motion to dismiss is DENIED as moot as to this argument.[4]

## 3. Failure to state a claim

As Harrison and the unnamed guards note, Plaintiff is asserting a claim under § 1983 alleging they violated her rights under the Eighth Amendment of the Constitution. They contend Plaintiff has failed to allege sufficient facts to state a claim against them. In assessing this argument, the court finds it appropriate to differentiate between the claims asserted against Harrison, and those asserted against the unnamed guards.

### a. Section 1983 claim against Harrison

Plaintiff asserts her § 1983 claim against Harrison in both his official and individual capacities. The § 1983 claim against Harrison in his official capacity is treated as an action against the Sheriff's Office as an entity. *See Kentucky v. Graham*, 473 U.S. 159, 165066 (1985). A local government entity, like a Sheriff's Office, cannot be held liable under § 1983 on a respondeat superior theory of liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, to establish liability of the entity, a plaintiff must allege facts showing that: (1) a government actor

---

[4] Plaintiff has filed a "Motion to Extend Time to Amend Claims with Request for Clarification" [DE-112], wherein she seeks additional time to "plead in response" to the Motion to Dismiss filed by Harrison and unnamed prison guards, in order to allege facts pertinent to immunity. For the reasons discussed above, immunity is not an issue. Additionally, Plaintiff apparently is under the misapprehension that she may still file an amended complaint "once as a matter of course." *See* Fed. R. Civ. P. 15(a)(1)(B) (providing that a party may amend its pleading once as a matter of course within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)). Plaintiff amended the complaint "once as a matter of course" on May 22, 2012, when she filed the "Joined Complaint" [DE-9] in this action. She no longer has the right to amend "as a matter of course" and must instead have the opposing party's written consent or seek leave of court. *See* Fed. R. Civ. P. 15(a)(2); *see also AntiCancer, Inc. v. Fujifilm Medical Sys. U.S.A.*, (S.D. Cal. Jan. 19, 2010) ("The language of Rule 15 states parties may amend '*once* as a matter of course,' not once per defendant as a matter of course.") (emphasis in original). The Motion to Extend Time [DE-112] is therefore DENIED.

12

Case 5:12-cv-00122-F   Document 125   Filed 02/27/14   Page 12 of 21

deprived the plaintiff of her federal rights; and (2) the harm was the result of municipal policy or custom. *Id.* "This requirement limits municipal liability under section

1983 to those actions for which the municipality is actually responsible by distinguishing between acts attributable to the municipality and acts attributable only to municipal employees." *Hill v. Robeson County,* 733 F. Supp. 2d 676, 683 (E.D.N.C. 2010) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997) and *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000)). A policy or custom for which a local government entity may be held liable may arise in four ways:

(1) through an express policy, such as written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Assuming that Plaintiff has alleged sufficient facts to show a constitutional violation, which is discussed below, she nevertheless has failed to allege any facts which give rise to the inference that the constitutional violation was a result of a custom or policy of the Sheriff's Office. She fails to allege that an express policy caused any constitutional violations. She fails to allege that any constitutional violation was caused by a decision of Harrison. She fails to allege that the Sheriff's Office failed, for example, to properly train its sheriff deputies. Finally, she fails to allege facts showing that a constitutional violation was caused by a widespread practice amounting to a custom of the Sheriff's Office. In sum, Plaintiff has failed to allege a § 1983 claim against Harrison in his official capacity.

13

Nor has Plaintiff alleged a claim against Harrison in his individual capacity. "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation omitted). There are insufficient factual allegations in Amended Complaint II, however, to give rise to the inference that Harrison was personally involved in any of alleged constitutional violations.

Moreover, although Plaintiff implies that Harrison is liable for actions of the guards by virtue of his status as their supervisor, the doctrine of *respondeat superior* is inapplicable to § 1983 claims. Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates, but this liability is not premised on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw v. Stroud* 13 F.3d 791, 798 (4th Cir. 1994) (internal quotation omitted). In order to establish supervisory liability under § 1983, a plaintiff must allege facts showing:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Randall v. Prince George's County, Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (quotations omitted). Under the first prong, the subordinates' conduct must be "pervasive," "meaning that the conduct is widespread, or at least has been used on several different occasions." *Id.* Hence, a plaintiff will not satisfy the deliberate indifference standard "by pointing to a single incident or isolated incidents[.]"

14

*Id.* Rather, at a minimum, the plaintiff must demonstrate that the supervisor exhibited "continued inaction in the face of documented widespread abuses." *Id.* Plaintiff has failed to allege any facts that gives rise to the inference that Harrison had knowledge of a "pervasive" risk of harm to her. Accordingly, Plaintiff has failed to state a viable claim against Harrison on the basis of supervisory liability.

Because Plaintiff has failed to state a claim against Harrison in either his official or individual capacity, her claims against him are DISMISSED.

## b. Plaintiff's claims against unnamed guards

Turning to Plaintiff's claims against the "unnamed guards" in their individual capacity,[5] Plaintiff contends that the actions of the unnamed guards and prison officials violated her rights under the Eighth Amendment.[6]

---

[5] Plaintiff also asserts a § 1983 claim against the "unnamed" prison officers and guards in their official capacities. As this court already has observed, however, a plaintiff's claim against a government official in his official capacity is treated as a claim against the government entity of which the official is an agent–here, the Office of Sheriff. *See Graham*, 473 U.S. at 165-66. Also, as this court already has observed, Plaintiff has failed to allege a plausible claim against the Office of Sheriff. Any claims against at the "unnamed guards" in their official capacities are therefore DISMISSED.

[6] The parties have assumed that the Eighth Amendment, as opposed to the Fourteenth Amendment, is implicated by Plaintiff's claim. *Cf. Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998) (noting, but not reaching, the question of whether imprisonment for contempt under Indiana law invokes the Eighth Amendment); *see also Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (explaining that the Eighth Amendment's protections are limited to those persons convicted of crimes); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the conditions of confinement of a pretrial detainee are to be evaluated under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment of the United States Constitution). The court will do the same. Regardless, however, the standards applied in Eighth Amendment conditions of confinement cases, which include denial of medical treatment, are essentially the same as those applied in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992); *see also Butler v. Fletcher*, 465 F.3d 340, 345 ("[D]eliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety.").

15

The Eighth Amendment's ban on "cruel and unusual punishment" requires prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "The Supreme Court has prescribed a two-part inquiry to determine whether prison officials' conduct violated their duty under the Eighth Amendment to provide humane conditions of confinement." *Williams v. Branker*, 462 F. App'x 348, 353 (4th Cir. 2012) (footnote omitted). "The first part of the inquiry asks whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive a prisoner of minimal civilized necessities." *Id.* (citing *Farmer*, 511 U.S. at 834). Minimal civilized necessities include "adequate food, clothing, shelter, medical care, or physical safety." *Id.* "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). "The second part of the inquiry asks whether prison officials subjectively acted with 'deliberate indifference to inmate health or safety,' meaning that they actually knew of and disregarded the inhumane nature of the confinement.'" *Williams*, 462 F. App'x at 353 (quoting *Farmer,* 511 U.S. at 837).

In this case, Plaintiff asserts five different allegations of deprivation. First, she alleges that despite being "calm and totally cooperative at all times," she was held in "solitary confinement under 24 bright lights, deprived of . . . ordinary rights of inmates without cause, including access to the canteen, a water cup, exercise, and recreation." Amend. Compl. II [DE-36] p. 19. To the extent that Plaintiff suggests that segregation from the regular Wake County jail population is per se cruel and unusual punishment, her claim is without support in the law. *See In re Long Term Admin.*

16

*Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471-72 (4th Cir. 1999). Nor do her allegations concerning lack of recreation during her confinement, which was at most seven days, give rise to a plausible claim that she was subject to "an extreme deprivation resulting in the denial of a minimal necessity of life." *Williams*, 462 F. App'x at 354; *see also Five Percenters*, 174 F.3d at 471-72. Furthermore, with regard to her access to the canteen, there is "no constitutional right of access to a prison gift or snack shop." *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996). Although Plaintiff alleges that she was denied access to a "water cup," she does not allege that she was denied water. Finally, although requiring inmates to live in constant illumination can, under certain circumstances, rise to the level of an Eighth Amendment violation, *see Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996), Plaintiff here has not alleged that the (at most) seven days she spent under 24-hour lights caused her any injury. *See Whitford v. Boglino*, 202 F.3d 276, 1999 WL 828598, at *3 (7th Cir. Oct. 15 1999) (unpublished) (finding that plaintiff failed to state an Eighth Amendment claim where he was housed in a lighted cell for three weeks and failed to allege that he lost sleep or was otherwise harmed). In sum, Plaintiff has failed to allege sufficient facts which would give rise to the inference that she suffered a serious deprivation of minimal civilized necessity.

Plaintiff's second allegations concerns the attempts to persuade her to take Klonopin. *See* Amended Compl. II [DE-36] p. 19. Like her previous allegations concerning her solitary confinement, Plaintiff's has failed to allege facts which satisfy the objective component of an Eighth Amendment claim. There is no suggestion that she was harmed by anyone who attempted to persuade her to take Klonopin; the inference is that Plaintiff did not take the medication.

Plaintiff's third allegation is that "on her first physical exam on day 1, it was clear she needed immediate professional medical care when her blood pressure was dangerously high." Amended Compl. II [DE-36] p. 20. It is undisputed that deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment rights. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for such, the serious medical "need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). A "'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." *Grayson*, 195 F.3d at 695. When the plaintiff complains that defendant physicians were deliberately indifferent despite rendering treatment, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

The implication from Plaintiff's allegations regarding her blood pressure is that Plaintiff–while ostensibly receiving medical care during the physical exam itself–did not receive further medical care addressing her blood pressure. Assuming, without deciding, that a blood pressure reading of 176/98 constitutes a "serious medical need," the court nevertheless concludes that Plaintiff has failed to state a claim. She does not name as a defendant any of the medical personnel who allegedly did not pursue further treatment, nor does she identify any other defendant who denied her treatment recommended by medical personnel. *See Miltier v. Beorn*, 896 F.2d 848,

18

854 (4th Cir. 1990) ("It is insufficient to show deliberate indifference to a serious medical need on the part of the subordinate physicians.").

Turning to Plaintiff's fourth allegation, she asserts that a lieutenant refused to provide her bread with which to take Alleve, which Plaintiff alleges was "burning a hole" in her stomach. The court finds that Plaintiff has failed to allege a medical need which implicates the Eighth Amendment. *See Webb v. McKnight*, No. 7:06-cv-00734, 2006 WL 3761382, at *2 (W.D.Va. Dec. 20, 2006) (finding that plaintiff's complaints of indigestion, constipation, headaches, vomiting and emotional distress did not constitute a serious medical need); *Ross v. McGinnis*, No. 94-A-6742, 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (concluding that inmate's complaints of abdominal pain, vomiting heartburn, constipation, body odor, and extreme body heat did not constitute serious medical need).

The court does find, however, that Plaintiff has stated an Eighth Amendment claim with regard to her final allegations. Specifically, Plaintiff alleges that on her third day of incarceration, she collapsed on the floor.[7] After a few hours, three guards entered her cell, and when she told them she needed help, they responded by asking "Are you dead yet?" and telling her, "Let us know if you die." Amend. Compl. II [DE-36] p. 20. The court finds that these allegations give rise to a plausible claim that the three guards were deliberately indifferent to Plaintiff's serious medical needs. *See Iko*, 535 F.3d at 241 (observing that "even a lay person would infer" from a prisoner's collapse that he was in need of medical attention).

_____

[7] Although Plaintiff does not allege in the Amended Complaint II what caused her to collapse, she opines in her opposition to the motion to dismiss that she possibly suffered a stroke. *See* Mem. in Support of Pl.'s Resp. [DE-114] pp. 1, 7, 8.

19

In sum, Defendants' motion to dismiss is DENIED as to Plaintiff's claims against the three guards,[8] in their individual capacity, who responded to her collapse. It is ALLOWED in all other respects to Plaintiff's claims against the "unnamed guards."

## IV. MOTION FOR RELIEF

On November 7, 2013, Plaintiff filed a Motion for Relief [DE-115] pursuant to Rule 60(b)(1) and (6) seeking relief from this court's January 8, 2013, Order [DE-94] dismissing her claims against the state judicial defendants. She sought, and received, two extensions of time to file a memorandum in support of the motion, and filed a partial memorandum [DE-120] in support of the motion on November 22, 2013. On January 3, 2014, she filed the remainder of the memorandum [DE-122], and three days later filed an "Amended Motion to Extend Time to File Supplement Memorandum" [DE-123].

Plaintiff's Amended Motion to Extend Time to file Supplement Memorandum [DE-123] is ALLOWED. The court has reviewed the Motion for Relief [DE-115], which essentially asks the court to reconsider its rulings in the January 8, 2013, Order, in light of Plaintiff's further interpretation of the Amended Complaint II and her additional arguments. The court has thoroughly reviewed Plaintiff's Motion for Relief and supporting materials, and finds it to be without merit. It is therefore DENIED.

---

[8] These guards are "unnamed." Plaintiff must identify these unnamed guards by the close of discovery. Failure to identify the unknown parties by the close of discovery will result in their dismissal from this action without prejudice. *See Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982) (dismissing unnamed defendant without prejudice where it does not appear that his identity could be discovered through discovery or through intervention of the court).

20

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Entry of Default [DE-102], Motion to Strike [DE-104], Motion for Extension of Time to Amend [DE-112] and Motion for Relief [DE-115] are all DENIED. Plaintiff's Motion for Extension of Time [DE-123] is ALLOWED. The Motion to Dismiss [DE-100] filed by Defendant Harrison and the unnamed prison officers is ALLOWED as to all claims asserted against Defendant Harrison, and the claims against unnamed prison guards in their official capacities. It is DENIED as to the § 1983 claim asserted against the three prison guards, in their individual capacity, who responded to the collapse of Plaintiff in her cell.

The Clerk of Court is DIRECTED to continue the management of this case.

SO ORDERED. This the 26 day of February, 2014.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge

21