UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-122-F

| | | |
|---|---|---|
| CAROL DALENKO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| DONALD W. STEPHENS, *et al.* | ) | |
| Defendants. | ) | |

This matter is before the court on the Motion for Summary Judgment [DE-149] filed by Defendants "unnamed" prison officers and guards. Also before the court is *pro se* Plaintiff Carol Dalenko's Motion to Substitute [DE-157] for "unnamed" prison officers and guards. For the reasons set forth below, the Motion to Substitute is ALLOWED in part and DENIED in part. The Motion for Summary Judgment is ALLOWED.

## I. BACKGROUND

After numerous pretrial motions not relevant to these motions, Defendant Wake County Sheriff Donald Harrison and "unnamed" prison officer and guards moved pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE-100] to dismiss Plaintiff's claims that they violated her civil rights during her confinement in the Wake County Jail from November 2 until November 9, 2009. In an order filed on February 27, 2014 [DE-125], the court allowed the motion to dismiss as to all claims against Defendants Harrison and all claims against the unnamed prison guards in their official capacities. As to the claims against the prison guards in their individual capacities, the court observed that Plaintiff alleged that actions of the unnamed guards violated her rights under the

Eighth Amendment, and that she asserted five different allegations of deprivations against many various unnamed guards. The court found that four of the allegations failed to state a claim. The court found, however, that Plaintiff did state a claim with respect to her allegations regarding three unnamed guards who responded to her alleged collapse on the floor. Thus, the court allowed the claim against these three unnamed guards, and this claim alone, to proceed. The court cautioned Plaintiff that she "must identify these unnamed guards by the close of discovery. Failure to identify the unknown parties by those close of discovery will result in their dismissal from this action without prejudice." February 27, 2014 Order [DE-125] at 20 n.8.

On April 3, 2014, United States Magistrate Judge James E. Gates issued a Scheduling Order [DE-128] with the following relevant deadlines: motions to join additional parties and to amend the pleadings to be filed by January 15, 2015; discovery to be completed by March 15, 2015; and potentially dispositive motions to be filed by April 15, 2015. On January 15, 2015, Plaintiff sought an extension of time to file motions for leave to join parties and amend the pleadings until March 15, 2015 [DE-132] which the court allowed [DE-133]. The court extended this deadline again until March 16, 2015 [DE-137]. On that date, Plaintiff moved again for an extension of time [DE-138], and the remaining Defendants moved to dismiss [DE-139] Plaintiff's claims for lack of prosecution and failure to join the unnamed parties.

During this time period, Plaintiff also filed a Motion to Compel [DE-134] seeking an order compelling Defendants to respond "fully and completely" to her First Set of Interrogatories and Restated First Set of Interrogatories; more specifically, Plaintiff sought specified "identity" information as to various Wake County employees. In an order filed on May 14, 2015 [DE-154], United States Magistrate Judge Robert B. Jones, Jr., allowed Plaintiff's motion to compel in part and

2

denied it in part. He ordered Defendants to provide, on or before May 28, 2015, Plaintiff's requested identity information as to the following three identified guards: Meredith Richards, Samuel Baldwin, and Linda Smith. He denied her motion to compel other discovery, and gave Plaintiff until June 11, 2015, to file a motion to amend the complaint in conformity with Rule 15 to identify the unnamed guards. He declined to award sanctions to Plaintiff, noting the protracted nature of the dispute. In another order filed that same day [DE-155], Judge Jones denied Plaintiff's motion to extend or stay deadlines, with the exception of the time to file dispositive motions, which he extended to June 25, 2015.

While the Motion to Compel was pending, Defendants filed their Motion for Summary Judgment [DE-149]. The undersigned denied Defendants' Motion to Dismiss for Lack of Prosecution on May 15, 2015 [DE-156].

On May 27, 2015, Plaintiff timely filed the Motion to Substitute [DE-157], and she also appealed from Judge Jones's orders ruling on her motion to compel and motion for extension of time. The undersigned affirmed [DE-160] Judge Jones's orders. Thereafter, Plaintiff filed a Motion for Discovery Sanctions and Motion for Show Cause Order for Criminal Contempt [DE-161], which she subsequently withdrew [DE-166]. After receiving extensions of time, Plaintiff filed her response [DE-169] to the motion for summary judgment on June 22, 2015. The next day she filed her affidavit and exhibits in support of her response to the motion for summary judgment [DE-170]. Several days later she filed an Errata [DE-171] and a Supplemental Response [DE-172].

## II. MOTION TO SUBSTITUTE

The court's consideration of Plaintiff's Motion to Substitute [DE-152] is governed by Federal Rule of Civil Procedure 15. Under that rule, a court may grant leave to a party to amend a pleading,

3

and such leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). However, leave to amend is properly denied if the amendment is prejudicial to the opposing party, there is bad faith on the part of the moving party, or the amendment would be futile. *Edwards*, 178 F.3d at 242. An amendment is considered futile if the asserted claim would not withstand a 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (4th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treas, State of Michigan, Rev. Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved which is consistent with the complaint's allegations. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level'" and the plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180.

Here, Plaintiff seeks to amend the complaint to name not only the three guards who responded to her alleged collapse in her cell, but also an "alphabetized list of (80) employees of the

4

Wake County Sheriff working in the area of her confinement in the Wake County Jail from November 2-9, 2009, for the previously "Unnamed" officers and guards as defendants in the Amended Complaint II [DE-36] . . . ." *See* Mot. to Subst. [DE-157]. To the extent that Plaintiff seeks to amend the complaint to name Samuel Baldwin, Meredith Richards, and Linda Smith as the guards who responded to her cell, and substitute them as defendants in this case, the motion is ALLOWED. To the extent that she seeks to name any other individuals as named defendants, her motion is DENIED as futile. The court already has dismissed the remainder of her claims against these "unnamed officers and guards," and therefore there is no need to specifically identify any of them as defendants.

### III. MOTION FOR SUMMARY JUDGMENT

Plaintiff's claims arise out of her confinement[1] at the Wake County Jail from November 2 through November 9, 2009. In her verified Amended Complaint [DE-36], Plaintiff alleges that:

> on day 3 [of her confinement], she collapsed on the floor, said she needed help when 3 guards entered after a couple of hours asking her, "Are you dead yet?", then slammed the cell door leaving her lying on the floor without assistance or immediate medical care, saying in jest, "Let us know if you die.", not knowing from one day to the next when or if she would be released.

Amend. Compl. [DE-36] ¶ 107.

In discovery responses, Plaintiff elaborated on her allegations, stating:

> Three (3) guards opened my cell door on 11/14/2009 while I lay unconscious on the floor. They spoke to me. They were one woman and two men in brown uniforms. The woman was Caucasian, approx 5'2- 5'6 and around 100- 135#, more or less, with medium length to long light brown hair. The two men were very similar to each other, large build, approx. 5'10 - 6'2, 200-250#, more or less. I believe the men were of African descent, although I had a hard time lifting my head up enough from the floor to see them clearly.

---

[1] Plaintiff was found to be in civil contempt for her alleged violation of a gatekeeping order in Wake County Superior Court.

5

Mot. for Summ. J., Pl.'s Resp. to Deft's First Set of Interrogatories [DE-149-1] at 2. She also stated:

> (3) On November 4, 2009, when (3) guards entered Ms. Dalenko's cell, a man asked: "Are you dead yet?" She struggled to lift her head and turn toward the door and slowly said with effort: "I need help. I think I had a stroke." The guards laughed and the man said, "Let us know if you die." They slammed the door and left. This willful disregarding for her urgent need for medical attention was "cruel and unusual punishment."
>
> No one came for some time after that, until a small white girl with dark medium length hair brought her breakfast. Ms. Dalenko said, "I don't feel well." The girl said, "Maybe you'll feel better if you eat something." Still no one came to check on her.
>
> After Ms. Dalenko was able to stand on her feet, she blew her nose and had clotted blood from both nostrils on the tissue paper, and the uvula hung down obstructing the back of her throat. She tried (3) tests for a stroke, and failed on (2). She was unable to touch her nose with her eyes closed and unable to yawn. Her neck and back hurt, and she was unable to walk back and forth for exercise as she had been doing and could not sit comfortably, without pain and discomfort.

*Id.* at 6.

In an affidavit submitted in support of her response to the motion for summary judgment, Plaintiff states:

> 17. When I came back to my cell from an early morning shower on 11/4/2009, I sat on the bench. I started feeling nauseous and weak and almost threw up. I started to lie down on the floor mat, but became light-headed. I tried to sit back down, but couldn't make it to the bench. I turned back toward the floor mat and passed out.
> 18. My BP had been very high. I feared for my life and recall the event very clearly.
> 19. I vividly recall waking up on the floor of my cell with my feet toward the door when the heavy steel door open[ed], and a man said, "Are you dead yet?"
> 20. I can still clearly visualize the two large, very similar men standing side by side, and a smaller white woman with light brown hair down to her shoulders standing in front of them. I looked toward them to ask for help: "I need help. I think I had a stroke."
> [images omitted]

6

> . . .
> 22. They laughed, and one of the men said as they slammed the door: "Let us know if you die."
> . . .
> 24. . . . . No one came to help me. I continued to feel ill in the days after that
> . . . .

Aff. of Carol (Bennett) Dalenko [DE-170-1]. Plaintiff also has proffered the medical observation records produced by Defendants, which show that from midnight until 5:00 a.m. on November 4, 2009, Plaintiff was observed approximately every 30 minutes, and the observing guard indicated that Plaintiff was asleep at each interval, until she was taken out for a shower at 5:00 a.m. *See* Medical Observation Notes [DE-170-3] at 2. At 5:31 a.m., the notes state: "Fed breakfast tray/complaining of dizzy spell." *Id.* At 6:00 a.m., the notes indicate the breakfast tray was retrieved by jail staff. *Id.* For the vast majority of the rest of the day on November 4, 2009, Plaintiff was observed as either "appearing asleep" or "sitting on bench." *Id.* at 3.

In considering the motion for summary judgment, the court views the evidence in the light most favorable to Plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56; *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–26 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–55 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-48. The party seeking summary judgment must come forward and demonstrate an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. *See Matsushita*, 475 U.S.

at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Plaintiff alleges that the actions of Samuel Baldwin, Meredith Richards, and Linda Smith violated her Eighth Amendment rights.[2] In order to prove that prison conditions violate the Eighth Amendment, a plaintiff must prove "(1) that the deprivation of a basic human need was <u>objectively</u> sufficiently serious, and (2) that <u>subjectively</u> the officials acted with a sufficiently culpable state of mind." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (quotation and alteration omitted); *see Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). The objective prong requires the prisoner to show that "the deprivation of [a] basic human need was objectively sufficiently serious." *Strickler*, 989 F.2d at 1379 (emphasis and quotation omitted). "The subjective prong requires the prisoner to show that the prison official acted with deliberate indifference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *De'lonta*, 708 F.3d at 525; *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Strickler*, 989 F.2d at 1379.

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge

---

[2] The parties have assumed that the Eighth Amendment, as opposed to the Fourteenth Amendment, is implicated by Plaintiff's claim. *Cf. Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998) (noting, but not reaching, the question of whether imprisonment for contempt under Indiana law invokes the Eighth Amendment); *see also Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (explaining that the Eighth Amendment's protections are limited to those persons convicted of crimes); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the conditions of confinement of a pretrial detainee are to be evaluated under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment of the United States Constitution). The court will do the same, because as a practical matter, the analysis under the due process clause and the analysis under the Eighth Amendment is materially indistinguishable. *See, e.g., Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Riley v. Dorton*, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), *abrogated on other grounds by Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010) (per curiam); *Hill v. Nicodemus*, 979 F.2d 987, 990–92 (4th Cir. 1992).

8

that harm will result." *Farmer*, 511 U.S. at 835. Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *De'lonta*, 708 F.3d at 525. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is not enough that the [prison official] should have recognized" the objectively serious condition, medical need, or risk of harm. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis, quotation, and citation omitted). Rather, a plaintiff must prove "actual knowledge of the risk of harm to the inmate." *Id.* (emphasis omitted). However, "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence . . . ." *Makdessi v. Fields*, No. 13-7606, 2015 WL 1062747, at *6 (4th Cir. Mar. 12, 2015). "[A]n injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it." *Id.* (quotation omitted). A prisoner's failure to give advance warning of or protest exposure to the risk is not dispositive concerning actual knowledge. *Id.* at *7–8.

Beyond such actual knowledge, the prison official "must also have recognized that his actions were insufficient to mitigate" the objectively serious condition, medical need, or risk of harm. *Iko*, 535 F.3d at 241 (quotation and emphasis omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *see Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). Deliberate indifference "sets a particularly high bar to recovery." *Iko*, 535 F.3d at 241.

9

Here, there is no record evidence that any guard subjectively believed that Plaintiff was suffering from an objectively serious condition. Plaintiff was under regular, constant supervision from November 3 through November 4, 2009. The observations records [DE-170-3] submitted by Plaintiff indicate that she did not appear to be in distress when she was observed during these regular intervals; rather, after being complaining of a dizzy spell at 5:30 a.m., Plaintiff was observed to be either sleeping or sitting on a bench for almost the entirety of the day. These records, provided by Plaintiff herself, are inconsistent with her allegations that Defendants Baldwin, Richards and Smith subjectively believed that Plaintiff had suffered from an objectively serious condition. Even taking as true Plaintiff's assertion that the guards asked, "Are you dead yet?" and told her, "Let us know if you die" upon finding her lying on the floor, "an isolated comment does not demonstrate deliberate indifference." *Eames v. Johns*, No. 5:10-CT-3136-D, 2012 WL 174476, at *3 (E.D.N.C. Jan. 20, 2012) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Accordingly, the Motion for Summary Judgment [DE-149] is ALLOWED.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Substitute [DE-157] is ALLOWED to the extent that she seeks to name Samuel Baldwin, Meredith Richards, and Linda Smith as Defendants in this action. It is DENIED in all other respects. The Motion for Summary Judgment [DE-149] is ALLOWED, and the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 2º day of July, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

10

Case 5:12-cv-00122-F   Document 173   Filed 07/20/15   Page 10 of 10